UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| LAUREN BLAZER, ERICA SPIRES, and, DAVID SANZ ) ) ) Plaintiffs, ) ) ) v. ) ) BUDDY GREGG MOTOR HOMES, LLC, ) ) Defendant. ) | No. 3:18-CV-00097 JUDGE: Greer MAGISTRATE: Guyton |

## ANSWER

Buddy Gregg Motor Homes, LLC ("Buddy Gregg") by undersigned counsel, responds to the Amended Complaint herein, as follows:

1. Buddy Gregg admits that Plaintiffs bring claims under the cited statutes and common law, but denies that Plaintiffs are entitled to any relief thereunder, or otherwise.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Denied.

7. Denied.

8. Denied.

9. Buddy Gregg admits that its former General Manager, Travis Hollifield ("Hollifield), expressed his anger in an inappropriate manner in a meeting in late October of 2016.

1

Buddy Gregg denies that Hollifield's comments were based on anyone's gender. Rather, they were expressions of anger.

10. Buddy Gregg is without knowledge or information sufficient to form a belief as to whether Hollifield was an alcoholic, that he routinely drank during the day, and that he was intoxicated by most afternoons, and therefore denies the same. Buddy Gregg admits, on information and belief, that Hollifield on occasion urinated in public while both male and female employees were present. Buddy Gregg denies the remaining allegations in paragraph 10 of the Amended Complaint.

11. Buddy Gregg admits that Hollifield and Plaintiff Sanz became involved in an argument in or around January 18, 2017. Buddy Gregg is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 11 of the Complaint, and therefore denies the same.

12. Buddy Gregg admits that Plaintiff Blazer called President Brad Cohen ("Cohen") in January of 2017 and complained, in essence, that two employees in the internet department were behaving as though they reported to Sales Manager Jerry Byrne ("Byrne") rather than to her. Cohen had those two employees, Travis Smith and Justin Whitehead, join a phone call that included Plaintiff Blazer, and Cohen told Smith and Whitehead in clear terms that they reported to Plaintiff Blazer. Buddy Gregg denies the remaining allegations in paragraph 12 of the Amended Complaint.

13. Buddy Gregg admits the allegations in the first sentence of paragraph 13 of the Amended Complaint and denies the allegations in the second sentence of paragraph 13 of the Amended Complaint.

14. Buddy Gregg admits that on or about January 25, 2017 Cohen and Don Forbes ("Forbes") met with Sanz initially, and later met with Spires. During the meeting, Sanz complained of Hollifield's conduct toward him, and said that Hollifield had made inappropriate comments around female employees, or words to that effect. Buddy Gregg denies the remaining allegations in paragraph 14 of the Amended Complaint.

15. Buddy Gregg admits that Cohen and Forbes asked to, and did, meet with Plaintiff Spires. Plaintiff Spires related that Hollifield had used vulgar language that was offensive to her, or words to that effect. Buddy Gregg denies the remaining allegations in paragraph 15 of the Amended Complaint.

16. Denied.

17. Buddy Gregg admits that it separated each of the three Plaintiffs on or about the stated dates. Buddy Gregg denies the remaining allegations contained in paragraph 17 of the Amended Complaint.

18. Buddy Gregg admits that jurisdiction herein is proper.

19. Buddy Gregg admits that venue herein is proper, but denies that it engaged in any actions that entitle any Plaintiff to relief.

20. Buddy Gregg admits that Plaintiffs filed charges of discrimination with the EEOC, and that the EEOC issues notices of right-to-sue. The charges and notices speak for themselves and Buddy Gregg denies any attempted characterization of their contents.

21. Paragraph 21 of the Amended Complaint states legal conclusions to which no response is required.

22. Buddy Gregg admits that allegations in the first sentence of paragraph 22 of the Amended Complaint, and denies the allegations in the second sentence of paragraph 22 of the

3

Amended Complaint. Buddy Gregg admits that Plaintiff Blazer raised certain complaints during her employment, and denies Buddy Gregg separated her for any related reason. Buddy Gregg eliminated the position formerly held by Plaintiff Blazer and has not hired anyone in that position.

23. Buddy Gregg admits the allegations in the first two sentences of paragraph 23 of the Amended Complaint, and denies the allegations in the third sentence of paragraph 23 of the Amended Complaint. Buddy Gregg admits that Plaintiff Spires was separated on or about June 1, 2017, and denies the remaining allegations in paragraph 23 of the Amended Complaint. The position Plaintiff Spires held was eliminated and Buddy Gregg has not hired anyone in that position.

24. Buddy Gregg admits the allegations in the first sentence of paragraph 24 of the Amended Complaint, and further admits that Plaintiff Sanz is male. Buddy Gregg is without knowledge or information sufficient to form a belief as to whether Plaintiff Sanz is a Messianic Jew, and therefore denies the same. Buddy Gregg admits that it employed Plaintiff Sanz as a sales person beginning on or about August 24, 2014. Buddy Gregg admits that in late January of 2017 Sanz made certain complaints about Hollifield, and that on or about October 13, 2017 Buddy Gregg separated Sanz in a reorganization of the sales department. Buddy Gregg denies the remaining allegations in paragraph 24 of the Amended Complaint.

25. Admitted, except that Buddy Gregg is a Texas limited liability company (not "corporation").

26. Admitted.

27. Buddy Gregg admits that Plaintiff Blazer played a role in developing and maintaining the web-site for the dealership but notes that the level of traffic generated did not result in the level of sales achieved when leads were routed to others.

28. Buddy Gregg states that pay records speak for themselves and denies any characterization of their contents. Buddy Gregg denies the remaining allegations in paragraph 28 of the Amended Complaint, except that the date of separation is correct.

29. Denied.

30. Denied.

31. Buddy Gregg admits that it discharged Hollifield in April of 2017. The remaining allegations in paragraph 31 of the Amended Complaint are denied.

32. Denied.

33. On information and belief, Buddy Gregg admits that Blazer is married and has children. Buddy Gregg denies the remaining allegations in paragraph 33 of the Amended Complaint.

34. Buddy Gregg admits that for a time Plaintiff Blazer assisted with finance work and avers that she represented to Cohen that she could reasonably handle those duties. The sales and pay records speak for themselves and Buddy Gregg denies any characterization of their contents. Buddy Gregg denies the remaining allegations in paragraph 34 of the Amended Complaint.

35. Denied.

36. Buddy Gregg admits that Byrne hired Ryan Miller ("Miller") and Rich (not Rick) Raffiani ("Raffiani") in May of 2017, and that Byrne knew them from previous employment. Byrne further knew that Miller and Raffiani worked as a team and had a record of producing internet based sales. Buddy Gregg admits that Byrne assigned web leads to Miller and

Raffiani to the exclusion of other sales persons. Their work resulted in an immediate increase in sales based on internet leads. Buddy Gregg separated Plaintiff Spires based on Company President Brad Cohen's decision in late May of 2017 to eliminate the internet sales department, which included the positions held by Plaintiffs Blazer and Spires. Buddy Gregg admits that Cohen did not consult with Plaintiff Blazer regarding that decision. Buddy Gregg denies the remaining allegations in paragraph 36 of the Amended Complaint.

37. Buddy Gregg admits that Plaintiff Blazer sent Forbes an e-mail on June 2, 2017, the text of which speaks for itself. Buddy Gregg denies any characterization of its contents. Further answering, by this date Cohen had already decided to eliminate the internet department.

38. Buddy Gregg admits that Plaintiff Blazer sent Forbes an e-mail on June 13, 2017, the text of which speaks for itself. Buddy Gregg denies any characterization of its contents. Further answering, by this date Cohen had already decided to eliminate the internet department.

39. Responding to the first sentence of paragraph 39 of the Amended Complaint, Plaintiff Blazer's June 13 e-mail speaks for itself. Buddy Gregg admits that Shannon Porche ("Porche") spoke with Plaintiff Blazer and generally agreed that no one should have to work in an environment such as Plaintiff Blazer had described. Buddy Gregg denies that Porche informed Byrne of Plaintiff Blazer's complaint. Further answering, by this date Cohen had already decided to eliminate the internet department.

40. Buddy Gregg admits that it separated Plaintiff Blazer on or about June 21, 2017, and denies that it gave conflicting reasons. Her position was in fact eliminated. Buddy Gregg did not hire an employee to replace Plaintiff Blazer as internet manager. Rather, Buddy Gregg

hired an IT employee who would, in addition to IT duties, place pictures on the web-site. No one has been hired as internet manager. Buddy Gregg does not have knowledge sufficient to form a belief as to whether the IT employee made a comment to Plaintiff Sanz as alleged, and therefore denies the same.

41. Denied.

42. Buddy Gregg admits that it hired Plaintiff Spires in April of 2015. Buddy Gregg denies the allegations in the last sentence of paragraph 42 of the Amended Complaint. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 42 of the Amended Complaint, and therefore denies the same.

43. Buddy Gregg admits that Plaintiff Spires went on maternity leave on or about the stated dates. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 43 of the Amended Complaint, and therefore denies the same.

44. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 44 of the Amended Complaint, and therefore denies the same.

45. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 45 of the Amended Complaint, and therefore denies the same.

46. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 46 of the Amended Complaint, and therefore denies the same.

47. Buddy Gregg denies that Plaintiff Spires was denied a wage increase for any discriminatory reason. Buddy Gregg cannot know what Plaintiff Spires came to believe and therefore denies allegations related to that subject.

48. Buddy Gregg denies that it did not provide Plaintiff Spires with a wage increase for any discriminatory reason. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 48 of the Amended Complaint, and therefore denies the same.

49. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 49 of the Amended Complaint, and therefore denies the same.

50. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 50 of the Amended Complaint, and therefore denies the same.

51. Buddy Gregg is without knowledge or information sufficient to form a belief as to the truth or falsity of allegations regarding Plaintiff Spires' hopes, and therefore denies the same. Buddy Gregg denies that Byrne made inappropriate comments to Spires, or otherwise. Buddy Gregg admits that Spires assisted other employees with computer issues.

52. Denied.

53. Denied.

54. Buddy Gregg admits that Spires did not complain about alleged inappropriate comments after January of 2017, and denies the remaining allegations in paragraph 54 of the Amended Complaint.

55. Denied.

56. Denied.

57. Buddy Gregg admits that on or about May 24, 2017 Plaintiff Spires met with Byrne, and that Plaintiff Blazer was present. Byrne offered Plaintiff Spires the opportunity to fill an open position doing tag and title work at the same wage rate as her current position. This position was not Plaintiff Spires' "former administrative duties." Buddy Gregg denies the remaining allegations in paragraph 57 of the Amended Complaint, except that it admits Plaintiff Spires was tearful at certain points.

58. Buddy Gregg admits that the following day, on or about May 25, 2017, Plaintiff Spires again met with Byrne, with Blazer present. Buddy Gregg denies the allegations that describe and characterize the meeting, except that Byrne did indicate that Plaintiff Spires was not required to accept the open position, and that Plaintiff Spires requested to remain in her current position.

59. Admitted. This is true because Byrne did not know about the position eliminations until Cohen informed him, which was not until after the meetings with Plaintiffs Spires and Blazer.

60. Admitted.

61. Denied.

62. Denied. Cohen made the separation decision based on his decision to eliminate the internet department.

63. Admitted.

64. The referenced agreements speak for themselves, and Buddy Gregg denies any characterization of their contents.

65. Buddy Gregg admits that for a time it used an "up" system for walk-in sales. The Company's sales records in terms of awards and otherwise speak for themselves. Buddy Gregg denies the remaining allegations in paragraph 65 of the Amended Complaint.

66. Denied, except that Sanz may have been present during a meeting in October of 2016 wherein Hollifield made a variety of inappropriate comments in anger.

67. Denied.

68. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 68 of the Amended Complaint, and therefore denies the same.

69. Buddy Gregg admits that Plaintiff Sanz and Hollifield had an argument on or about January 18, 2017. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 69 of the Amended Complaint, and therefore denies the same.

70. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 70 of the Amended Complaint, and therefore denies the same.

71. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 71 of the Amended Complaint, and therefore denies the same.

72. Buddy Gregg admits that Plaintiff Sanz spoke with Stephen Stitt ("Stitt") regarding the incident with Hollifield on or about the stated date, and that Plaintiff Sanz spoke of the incident with James Glasgow who generally indicated he would take care of the matter. Buddy Gregg denies the remaining allegations in paragraph 72 of the Amended Complaint.

73. Buddy Gregg admits that Cohen and Forbes met with Sanz on or about January 25, 2017, that during the meeting Sanz referenced Hollifield's conduct during the October of 2016 meeting, that Cohen discussed with Sanz the January 18 argument between Sanz and Hollifield, and that Cohen asked Sanz to consider his own conduct in the situation or words to that effect. Buddy Gregg denies the remaining allegations in paragraph 73 of the Amended Complaint.

74. Denied.

75. Buddy Gregg does not have information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 75 of the Amended Complaint, and therefore denies the same.

76. Denied, except that an African-American employee resigned in 2017.

77. Denied.

78. Buddy Gregg admits that it discharged Hollifield in April of 2017, and denies that he received no warning for his conduct. After Cohen met with Spires and others in January of 2017 and learned – for the first time - of Hollifield's conduct during the October of 2016 meeting, Cohen told Hollifield, with witnesses present, that if Hollifield made such inappropriate comments again (or words to that effect) that he (Hollifield) would be discharged.

79. Denied.

80. Denied.

81. Denied. In particular, Buddy Gregg avers that its sales policies and practices applied equally to all sales persons, including Plaintiff Sanz.

11

82. Buddy Gregg admits that in May of 2017 Byrne hired Miller and Raffini, whom he had known from previous work experience, and that Byrne assigned internet leads to Miller and Raffiani. The impact to Sanz was the same as for all other sales employees. Buddy Gregg admits that for a short time in 2017 it experienced difficulties with computer access, and further responds that it purchased additional licenses to remedy the issue. Buddy Gregg denies the remaining allegations in paragraph 82 of the Amended Complaint, except that it admits that it is likely that Plaintiff Sanz, and others, used their smart phones to conduct sales activities during the short period of time when the dealership needed additional licenses.

83. Buddy Gregg does not know what Plaintiff Sanz was told by others and therefore denies allegations related to that subject. Buddy Gregg denies that Plaintiff Sanz had a "target on his back" or that its management made such comments.

84. Buddy Gregg denies that any of its sales policies or practices were applied differently to Plaintiff Sanz in comparison to any other sales person. The sales records speak for themselves and Buddy Gregg denies any characterization of same.

85. Buddy Gregg denies that Byrne instructed Sanz not to attempt sales via Craigslist. Rather, Byrne instructed the sales staff, including Sanz, that if they wished to engage in web advertising such as Craigslist the request should be cleared with Miller and Raffiani as they were handling internet sales, and that pricing must be cleared via Byrne. Buddy Gregg denies the remaining allegations in paragraph 85 of the Amended Complaint.

86. Buddy Gregg admits that Plaintiff Sanz submitted a letter that is dated June 28, 2017. Buddy Gregg is without knowledge or information sufficient to form a belief as to the truth

or falsity of the remaining allegations in paragraph 86 of the Amended Complaint, and therefore denies the same.

87. Buddy Gregg is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 87 of the Amended Complaint, and therefore denies the same.

88. Buddy Gregg does not know what other individuals told Plaintiff Sanz and therefore denies allegations on that subject. Buddy Gregg denies that Randy Thomas ("Thomas") occupied any position by which he spoke for Buddy Gregg relative to any employment related matter or issues or otherwise occupied any position such that his actions relative to Plaintiff Sanz can be imputed to Buddy Gregg. Buddy Gregg does not know what comments Thomas made regarding Plaintiff Sanz and therefore denies the same, and denies that Buddy Gregg engaged in any efforts to force Plaintiff Sanz to resign. Buddy Gregg admits that Plaintiff Sanz complained to Byrne, and further notes that Byrne issued a written notice to both Thomas and Plaintiff Sanz to the effect that they must focus on their work and not on personality conflicts, or words to that effect. Buddy Gregg denies any allegations in paragraph 88 of the Amended Complaint that are inconsistent with the above.

89. On information and belief Buddy Gregg admits that in or about September of 2017 Plaintiff Sanz initiated a conversation with Thomas and in essence accused Thomas of spreading false statements, that Thomas denied same, and that Thomas and Plaintiff Sanz had a confrontational conversation at that time. Buddy Gregg does not know the details of the conversation and therefore denies allegations of the same.

90. Buddy Gregg admits that Byrne gave both Plaintiff Sanz and Thomas a memo setting out expectations regarding their behavior at work. The memo speaks for itself and Buddy

13

Gregg denies any characterization of its terms. Buddy Gregg denies that Byrne retaliated against Sanz via the memo, or otherwise. Buddy Gregg admits that Plaintiff Sanz attempted to describe himself as solely a victim but denies that is accurate. Buddy Gregg avers that the memo issued by Byrne to both Plaintiff Sanz and Thomas was a proper response to a personality conflict in the workplace. Buddy Gregg admits that Plaintiff Sanz refused to sign the memo, but notes that Thomas did so. Buddy Gregg denies any allegations that are inconsistent with the above.

91. Buddy Gregg admits that it separated Plaintiff Sanz on or about October 13, 2017 in a reorganization of the sales department. The reasons given are not inconsistent, as his difficulties with others were part of the reason he was selected for inclusion in the reorganization. He was not selected for any retaliatory reason.

92. Buddy Gregg is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of paragraph 92 of the Amended Complaint, and therefore denies the same. Buddy Gregg denies the remaining allegations in paragraph 92 of the Amended Complaint.

93. Buddy Gregg incorporates its responses to paragraphs 1-92 of the Amended Complaint as if set forth in full herein.

94. Admitted.

95. Admitted.

96. Denied.

97. Denied.

98. Buddy Gregg incorporates its responses to paragraphs 1-97 of the Amended Complaint as if set forth in full herein.

99. The referenced documents speak for themselves and Buddy Gregg denies any characterization of their contents.

100. Denied.

101. Denied.

102. Buddy Gregg incorporates its responses to paragraphs 1-101 of the Amended Complaint as if set forth in full herein.

103. The referenced document speaks for itself and Buddy Gregg denies any characterization of its contents.

104. The allegations in paragraph 104 of the Amended Complaint state legal conclusions to which no response is required.

105. Denied.

106. Denied.

107. Buddy Gregg incorporates its responses to paragraphs 1-106 of the Amended Complaint as if set forth in full herein.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. Buddy Gregg incorporates its responses to paragraphs 1-111 of the Amended Complaint as if set forth in full herein.

113. Denied.

114. Denied.

115. Buddy Gregg incorporates its responses to paragraphs 1-114 of the Amended Complaint as if set forth in full herein.

116. Buddy Gregg is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 116 of the Amended Complaint, and therefore denies the same.

117. Buddy Gregg is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 117 of the Amended Complaint, and therefore denies the same.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Denied.

125. Denied.

126. Buddy Gregg denies that Plaintiffs are entitled to any of the relief prayed for in the Prayer For Relief that follows paragraph 125 of the Amended Complaint, including any of the relief prayed for in the sub-paragraphs thereunder.

127. Except as specifically admitted above, Buddy Gregg denies all allegations in the Amended Complaint.

Buddy Gregg submits the following defenses:

## FIRST DEFENSE

Plaintiffs' claims are barred to the extent they fail to meet the applicable statutory limitations periods.

## SECOND DEFENSE

Plaintiffs' claims for damages are barred to the extent Plaintiffs have failed to mitigate their alleged damages.

## THIRD DEFENSE

Buddy Gregg is entitled to a setoff against Plaintiffs' alleged damages of the amounts that Plaintiff earned or obtained, or could have earned or obtained, through reasonable efforts, and of amounts paid to or on behalf of any Plaintiff, by Buddy Gregg.

## FOURTH DEFENSE

In the event that any Plaintiff may be found to be entitled to any relief, Plaintiff has adequate remedies at law.

## FIFTH DEFENSE

Plaintiffs' claims for punitive damages, if any, are barred because the acts and omissions of Buddy Gregg, if any, fail to rise to the level required to sustain an award of punitive damages. There was no evil intent, no evidence of a malicious, knowing, oppressive or fraudulent intent to deny Plaintiff of protected rights, and no wantonness or wilfulness, and thus no support for an award of punitive damages.

## SIXTH DEFENSE

Plaintiffs' discrimination and retaliation claims, to the extent they are raised in this case, are barred in whole or in part because Buddy Gregg exercised reasonable care to prevent and

correct any discriminatory or retaliatory behavior and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Buddy Gregg, or to otherwise avoid harm.

## SEVENTH DEFENSE

Buddy Gregg is insulated from liability under Title VII and the THRA for discrimination and retaliation to the extent that such claims are raised in this case because Buddy Gregg had adopted and enforced an anti-discrimination/no harassment policy and neither knew nor had reason to know of the alleged acts or omissions complained of in this case.

## EIGHTH DEFENSE

Plaintiffs failed to properly and satisfactorily perform job duties; managerial actions Plaintiffs have labeled as discriminatory were fully justified by their failure to perform.

## NINTH DEFENSE

Buddy Gregg's actions relating to any assignments, training, and other terms and conditions of Plaintiffs' employment, were fully justified and/or privileged.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because their perception of conduct alleged to constitute harassment was not reasonable.

## ELEVENTH DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands.

## TWELFTH DEFENSE

While Buddy Gregg denies that any employee under its supervision violated the Title VII or the THRA, if any Plaintiff's rights were violated, such violation occurred outside the scope of employment and without the consent of Buddy Gregg. Buddy Gregg neither knew nor had reason

18

to know of such circumstance. Buddy Gregg did not condone, ratify or tolerate any such conduct, but instead prohibited such, and took prompt, appropriate remedial action to eliminate any alleged unlawful conduct.

## THIRTEENTH DEFENSE

Plaintiffs [all or just Blazer and Spires] are not entitled to a jury trial because they entered into an agreement with Buddy Gregg whereby both parties agreed to have any dispute heard by the judge, sitting without a jury.

## FOURTEENTH DEFENSE

All claims under Title VII which were not the subject of a timely charge filed with the EEOC pursuant to 42 U.S.C. § 2000e-5(e) are barred.

## FIFTEENTH DEFENSE

All claims under Title VII with respect to which no investigation or conciliation effort has been made by the EEOC or THRC are barred for Plaintiff's failure to exhaust administrative remedies.

## SIXTEENTH DEFENSE

Buddy Gregg contends that no discriminatory employment decisions were made in this case; however, Buddy Gregg may not be held vicariously liable for punitive damages under Title VII or the THRA based on unlawful employment decisions made by its managerial agents, if any are proven, because any such unlawful decisions were contrary to Buddy Gregg's policies and good-faith efforts to comply with Title VII and the THRA.

Respectfully submitted this 18th day of May, 2018.

/s/ Howard B. Jackson

Howard B. Jackson, BPR #021316
Ann E. Sartwell, BPR #021258
Wimberly Lawson Wright Daves & Jones, PLLC
P.O. Box 2231
Knoxville, TN 37901-2231
(865) 546-1000
(865) 546-1001 (fax)

Attorneys for Buddy Gregg Motor Homes, LLC

**CERTIFICATE OF SERVICE**

I certify that the foregoing Answer was served on the following person, via the Court's electronic filing system, this 18th day of May, 2018:

Edward G. Phillips
Brandon L. Morrow
Kramer Rayson LLP
P.O. Box 629
Knoxville, TN 37901-0629

/s/ Howard B. Jackson
Howard B. Jackson

20

Case 3:18-cv-00097-DCLC-HBG  Document 9  Filed 05/18/18  Page 20 of 20  PageID #: 98