IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LAUREN BLAZER, ERICA SPIRES, and DAVID SANZ, | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) No. 3:18-CV-00097 ) |
| BUDDY GREGG MOTOR HOMES, LLC, | ) ) |
| *Defendant*. | ) ) |

**PLAINTIFF SANZ'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant's Motion for Summary Judgment on Sanz's intentional interference with business relations claim [Doc. 35] because Buddy Gregg failed to follow the Court's Scheduling Order with respect to a separate statement of material facts and a reasonable factfinder could conclude that there are issues of fact in dispute as to Sanz's intentional interference with business relations claim.

**I. INTRODUCTION**

Buddy Gregg asserts that Sanz's intentional interference with business relations claim must be dismissed because he cannot establish that Buddy Gregg intended to get him fired from Tennessee RV (element three) and he cannot establish that Buddy Gregg's interference actually led to his termination (element five). There are genuine issues of material fact that preclude summary judgment on Sanz's intentional interference with business relations claim.[1] There is

---

[1] Sanz's has stated his claim in the Amended Complaint as one for "intentional interference with business relations." [Doc. 7, Page ID#: 73.] This claim arises out of Buddy Gregg's interference with his subsequent employment with

testimony from a Buddy Gregg manager, Paul Chapman, that another manager, Eric Bivens, called Mr. Sanz's employer, Tennessee RV, "for the purpose of getting David Sanz fired." (Chapman Depo. at 68:10-17.) Buddy Gregg relies on an affidavit from Jason Rees, General Sales Manager at Tennessee RV, which generally states that he did not communicate with anyone at Buddy Gregg about Mr. Sanz's termination. [Doc. 36-4, PageID #: 224.] What the affidavit does not say, though, is whether anyone else (i.e., the recipient of Mr. Biven's interfering phone call) influenced Mr. Rees's decision. Because there are disputed issues of fact, summary judgment is improper on Sanz's intentional interference claim.

## II. FACTS

David Sanz worked as a salesman at Buddy Gregg from August 24, 2015 until he was terminated on October 13, 2017. (Sanz Depo. 22:14-16; 119:3-8.) After his termination, Sanz went to work at Tennessee RV on December 18, 2017. (Sanz Depo. 119:18-22.) Mr. Sanz was terminated from Tennessee RV on March 20, 2018. (Sanz Depo. 120:12-15.) Mr. Sanz was told, and his separation notice states, that he was terminated because he was "not a good fit for Tennessee RV." (Sanz Depo. Exhibit 57, 120:12-15.)

Later, by way of Paul Chapman, the body shop manager at Buddy Gregg, Mr. Sanz learned that Eric Bivens placed a call to Tennessee RV for purpose of getting him fired. (Sanz Depo. 121:10-122:10.) Bivens, who was previously the service manager at Buddy Gregg (Seiber Depo. 9:1-3), now holds the title of Vice President.[2] (Seiber Depo. 8:19-21.)

---

Tennessee RV. "[T]he elements that a plaintiff must prove to bring a claim for international interference with business relationships apply equally to a claim for international interference with employment." *Forsman v. Rouse*, No. 3:07-0327, 2008 WL 2437644, at *6 (M.D. Tenn. June 16, 2008).

[2] In addition to causing Mr. Sanz's unlawful termination from Tennessee RV, Bivens has also been accused in this case of coercing a witness to give false information during the EEOC stage. Ms. Seiber, an employee of Buddy Gregg, was interviewed as part of the Company's response to Plaintiff Blazer's EEOC Charge of Discrimination. Ms. Seiber testified that Bivens told her that "he would give little hints in the room. If he put his head down, I should answer no.

At his deposition, Mr. Chapman testified that Bivens called the service manager at Tennessee RV, a man by the name of James, and in an attempt to get Sanz fired. Mr. Chapman testified as follows:

> Q: If my notes in our meeting last March reflected that you told me that Eric Bivens called Tennessee RV for the purpose of getting David Sanz fired, you wouldn't disagree with that, would you?
>
> A: No, I wouldn't. He was talking to James over there and informed him that we had had legal issues.

(Chapman Depo. 68:10-17.)

> Q: Do you recall Mr. Bivens saying anything in the conversation with James from Tennessee RV referencing Mr. Sanz and saying is the one that's trying to sue us still there?
>
> A: Yes.
>
> Q: Okay.
>
> A: And at the time, I may have possibly thought it was David. Now knowing that Lauren was up there at the same time. It could have been Lauren.

(Chapman Depo. 73:9-18.)

> Q: Do you recall Mr. Bivens telling James from Tennessee RV that Sanz is a piece of shit, he got hauled off by the cops?
>
> A: Yes, I believe it was James he was talking to, but yes, I do recall that conversation.

---

Questions about him saying things about other females, I didn't hear anything…I was needing a job so I did what he told me to do." (Seiber Depo. 22:10-19.) When asked if she "felt like if [she] didn't lie to protect Mr. Bivens that [she] thought her job would be in jeopardy," Ms. Seiber replied "definitely." (Seiber Depo. 22:20-23.)

3
Case 3:18-cv-00097-DCLC-HBG   Document 41   Filed 07/22/19   Page 3 of 8   PageID #: 306

(Chapman Depo. 73:23-74:2.)

Plaintiff Blazer's testimony also supports Mr. Sanz's claim of intentional interference with business relations. Ms. Blazer testified that Mr. Chapman also told her that Eric Bivens spoke with someone at Tennessee RV and he said, "watch me get David fired, or something to the effects of that." (Blazer Depo. 111:25-112:10.)

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).; *Nat'l Satellite Sports, Inc. v. Eliadis Inc.,* 253 F.3d 900, 907 (6th Cir.2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

*In Kabba v. Williams*, No. 3:16-2718, 2017 WL 5478394, at *2 (M.D. Tenn. Nov. 15, 2017), the court specifically referenced how credibility determinations are to be made at the summary judgment stage: <u>they are not</u>. There, the court held:

> Courts construing Rule 56 consistently hold that summary judgments should not be granted in cases where the outcome hinges

> squarely on the state of mind, intent, or credibility of the witnesses. *Hoover v. Switlik Parachute Company*, 663 F. 2d 964, 968 (9thCir. 1981). In other words, doubt as the credibility of material witnesses will create a genuine issue of material fact sufficient to render granting summary judgment improper. *Transway Finance Company, Inc. v. Gershon*, 92 F. R. D. 777, 778-79 (E. D. N. Y. 1982).

Id. at *2.

## IV. ARGUMENT

Buddy Gregg's motion should be denied because it failed to follow the Court's Scheduling Order with respect to a separate statement of material facts and a reasonable factfinder could conclude that there are issues of fact in dispute as to Sanz's intentional interference with business relations claim.

### A. Buddy Gregg failed to submit a separate statement of material facts.

The Court's Scheduling Order requires movants on summary judgment to submit a "separate concise statement of material facts… Each fact shall be set forth in a separate, numbered paragraph." [Doc. 14, PageID #: 113.] Here, Buddy Gregg has not submitted a separate statement of material facts, nor are its facts set forth in numbered paragraphs. *See Raceday Ctr., LLC v. RL BB Fin., LLC*, No. 2:11-CV-17, 2013 WL 4500437, at *2 (E.D. Tenn. Aug. 21, 2013) (failing to submit a separate statement of material facts "is not acceptable practice before this Court, and it could well result in a motion for summary judgment being denied."). Buddy Gregg's motion should be denied on this basis alone.

### B. Intentional Interference with Business Relations

To establish an intentional interference with business relationship claim, a plaintiff must establish the following elements: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge

of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference. *Trau–Med of America, Inc. v. Allstate Insurance Co.*,71 S.W.3d 691, 701 (Tenn.2002) (footnotes and internal citation omitted). Defendants move for summary judgment on elements three and five.

### 1. Bivens, a Buddy Gregg manager, intended to get Mr. Sanz fired from Tennessee RV.

There is evidence in the record showing that Bivens called Tennessee RV, Mr. Sanz's employer, in an attempt to get him fired. Buddy Gregg contends that Mr. Chapman "really couldn't tell" if Bivens was speaking unfavorably about Sanz during the telephone call in question. [Doc. 36, PageID #: 213.] Yet, Mr. Chapman testified that he recalls "Mr. Bivens telling James from Tennessee RV that Sanz is a piece of shit [and that] he got hauled off by the cops." (Chapman Depo. 73:23-74:2.) There can be no dispute that he recalled this unfavorable depiction of Sanz by Bivens. And Mr. Chapman does not dispute that he recalled a conversation where "Eric Bivens called Tennessee RV for the purpose of getting David Sanz fired." (Chapman Depo. 68:10-17.)

### 2. A Disputed Issue of Fact Remains as to whether Bivens' call to Tennessee RV led to Sanz's termination.

Buddy Gregg relies on Tennessee RV General Sales Manager Jason Rees's three-paragraph affidavit in an attempt to show that the Bivens call did not cause Sanz's termination. What the affidavit does not say is perhaps more telling than what it does.

Rees's affidavit [Doc. 36-4] does not deny that Bivens called Tennessee RV in an attempt to get Sanz fired. It only says that Rees was not contacted by anyone from Buddy Gregg. Further,

Rees's affidavit does not say whether his decision to terminate Sanz was influenced by the person who received Bivens' interfering phone call.

Sanz should be granted the opportunity at trial to cross-examine Rees on whether his decision to terminate Sanz was influenced in any way by Bivens' phone call. As Judge Phillips held in *M & M Gift Shows, LLC v. Convention & Visitors Bureau of Pigeon Forge*, No. 3:04-CV-125, 2005 WL 8162370 (E.D. Tenn. Mar. 8, 2005):

> Viewing these facts in a light most favorable to M&M, the court finds that there are disputed issues of material facts, which, if resolved in plaintiff's favor, could support a jury verdict for plaintiff on [the intentional interference] issue. Moreover, the credibility of witnesses is peculiarly within the province of the jury and a trial judge is not permitted to substitute his opinion of the credibility of the witnesses for that of the jury. *Wertham Bag Corp. v. Agnew*, 202 F.2d 119, 122-23 (6th Cir. 1953). Whether M&M can prove at trial that defendants' actions constituted intentional interference with its business relationships is a decision which should be made by a jury after plaintiff has had an opportunity to put on its proof. At this juncture in the proceedings, M&M has presented sufficient evidence to support its claim and there are genuine issues as to material facts in dispute in this case. Accordingly, defendants' motion for summary judgment as to plaintiff's claim of intentional interference with business relationships will be DENIED.

Id. at *3.

## V. CONCLUSION

Defendant's motion should be denied. Viewing these facts in light most favorable to Sanz, as the Court must, there is sufficient evidence to create disputed issues of material facts, thus precluding summary judgment. This issue is better suited for resolution at trial than through a Rule 56 Motion.

Respectfully submitted this 22nd day of July 2019.

/s/ Brandon L. Morrow
Edward G. Phillips (BPR #006147)
Brandon L. Morrow (BPR #031242)
**KRAMER RAYSON LLP**
Post Office Box 629
Knoxville, TN 37901-0629
865.525.5134
ephillips@kramer-rayson.com
bmorrow@kramer-rayson.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of July 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. The following parties will be served by regular U.S. mail. Parties may gain access to this filing through the Court's electronic filing system.

/s/ Brandon L. Morrow
Brandon L. Morrow
